IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

JOSEPH E. LAWRENCE,

Petitioner,

vs.

LYNN GUYER, et.al.,

Respondents.

Cause No. CV 19-163-M-DLC-KLD

ORDER AND FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the Court on an Amended Petition, Supplement, and corresponding documents filed by Joseph E. Lawrence, a state prisoner proceeding pro se. See, (Docs. 7; 7-1; 7-2; 9; and 9-1.) Lawrence was directed to show cause as to why the majority of his claims should not be dismissed as procedurally defaulted. (Doc. 10). Lawrence timely responded. (Docs. 11; 11-1.)

This Court then noted that Claims 14-16 that Lawrence presented in his Supplement were fully unexhausted, but because no additional state avenues for review were open to Lawrence, the claims also appeared to be procedurally defaulted. See, (Doc. 14 at 1-2.) Lawrence was provided an opportunity to show cause as to why those claims should not also be dismissed. *Id*. at 2-3. Lawrence timely responded to the Court's order. See, (Doc. 15.)

Lawrence now seeks leave of the Court to file: a Petition for Writ of

Prohibition (Doc. 16-1 at 3-7); a Petition for a Writ of Mandamus, *Id*. at 10-17; and, a Petition for a Writ of Error. *Id*. at 19-38. As set forth below, the request will be denied.

As explained herein, Lawrence's petition should be dismissed. His first claim is not cognizable in federal habeas. His remaining claims are procedurally defaulted without excuse.

## I. Background

The procedural history of Lawrence's state court proceedings has been set forth in prior orders of the Court. See e.g., (Doc. 10 at 2-5.)[1] It will not be repeated at length, but can be briefly summarized as follows:

In May of 2014, Lawrence signed a plea agreement in which he agreed to enter *Alford* pleas[2] to the amended charges of Sexual Assault and Solicitation of Sexual Assault. As part of this agreement, Lawrence reserved his right to appeal any denial of his pretrial motion to sever. Lawrence was sentenced to 30 years at the Montana State Prison, with 20 of those years suspended. Lawrence filed a direct appeal arguing his *Alford* pleas were invalid because the district court failed to rule on the defense's motion to sever prior to accepting Lawrence's pleas. The

[1] See also, *Lawrence v. Kirkegard*, Cause No. CV-16-134-M-DLC-JCL, Or. at 1-3 (Oct. 14, 2016); *Lawrence v. Salmonsen*, Cause No. CV-18-135-M-DLC-JCL, Find. & Rec. at 2-4 (Sept. 6, 2018).

[2] An *Alford* plea is a guilty plea entered into by a defendant in connection with a plea bargain, without actually admitting guilt. *North Carolina v. Alford,* 400 U.S. 25, 35 (1970); *Black's Law Dictionary* 71 (Bryan A. Garner ed., 7th ed., West 1999).

State conceded the issue. The Montana Supreme Court reversed and remanded the matter with instructions to the district court to vacate Lawrence's pleas.

The matter was remanded. In 2017, one month prior to trial, Lawrence requested that his appointed counsel be dismissed and that he be allowed to proceed pro se. Lawrence's request was granted. At his final pretrial hearing, in April of 2017, with the potential jurors waiting in the courthouse, Lawrence entered into a plea agreement with the State. Lawrence agreed again to enter *Alford* pleas to Sexual Assault and Solicitation of Sexual Assault. As part of this agreement, Lawrence specifically agreed to waive his right to appeal. The parties also agreed to an appropriate disposition sentence of 10 years with 5-years suspended on each count, with the sentences to run consecutively. In exchange, the State agreed to dismiss 243 counts of Sexual Abuse.

In June of 2017, the District Court sentenced Lawrence, pursuant to the parties' agreement, to a net 20-year prison sentence, with 10 of the years suspended. Lawrence did not file a direct appeal, but did attempt to raise various claims in a state habeas petition. As discussed below, the Montana Supreme Court only addressed the merits of one of his claims: Lawrence's challenge to the use and acceptance of *Alford* pleas. In relation to the remainder of his claims, the Court determined that by virtue of his guilty pleas, Lawrence waived all challenges to non-jurisdictional defects, including constitutional violations, which may have

occurred prior to the entry of the *Alford* pleas.

Pertinent to this Court's analysis, it is also noteworthy that in June of 2019, Lawrence filed a "Motion to Compel for Production of Public Records, Documents, Records, Information, Reports, and Evidence" in the state district court. See e.g, (Doc. 16-1 at 39.)[3] In his motion, Lawrence sought an order compelling production of information and documents related to any "complaints, criminal acts, official misconduct, ethical violations, investigations, and sanctions involving former Twenty-First Judicial District Court Judges Jeffry H. Langton and James A. Haynes and Ravalli County Attorney Bill Fulbright" from various entities including: the Montana Supreme Court, the Montana Judicial Standards Commission, the Montana Attorney General's Office, the Federal Bureau of Investigation, the Drug Enforcement Agency, and the U.S. Department of Justice. *Id*. at 39-40.

The district court observed that Lawrence had no outstanding claim in the underlying case upon which to base a motion to compel and that he failed to explain how his motion had any bearing upon the underlying criminal proceeding which concluded following his *Alford* pleas and sentencing in June of 2017. *Id*. at 40. The court further noted that, as part of his plea agreement, Lawrence waived

[3] See, *State v. Lawrence*, Cause No. DC-12-127, Or. (filed July 2, 2019). A copy of the district court order was filed by Lawrence into this Court's record as an attachment to Document 16.

the right to appeal or otherwise challenge his conviction by direct appeal, habeas corpus, or postconviction relief. *Id*. at 41, (citing Lawrence's Plea Agreement). Further, the court found that Lawrence's motion "appears to be a fishing expedition for unspecified and apparently nonexistent information about Judges Haynes and Langton and Prosecutor Fulbright in reliance on 'apparent' and 'seemingly factually supported' allegations of misconduct." *Id*. Because the motion lacked factual or legal basis and was without merit, it was denied. *Id*.

Lawrence then appealed the district court's decision.[4] The Montana Supreme Court noted that Lawrence was appealing an order that had been issued after judgment, that his case was completed, and that he had previously been denied habeas corpus relief. *Id*. at 43. The Court held, "Lawrence has failed to show that the denial of his motion to compel affects his substantial rights: Lawrence pleaded guilty, did not preserve or raise this issue prior to entering his guilty plea, and did not appeal his convictions. We have determined that this appeal is improper and that dismissal is warranted." *Id*. The matter was dismissed with prejudice. *Id*.

## II. Analysis

The Court is required to screen all actions brought by prisoners who seek

[4] See, *State v. Lawrence*, Cause No. DA 19-0431, Or. (Mont. Mar 31, 2020). A copy of the Montana Supreme Court's order was filed by Lawrence into this Court's record as an attachment to Document 16.

relief. 28 U.S.C. § 1915(a). The Court must dismiss a habeas petition or portion thereof if the prisoner raises claims that are legally frivolous or fails to state a basis upon which relief may be granted. 28 U.S.C. § 1915A(b)(1), (2). This means the Court must dismiss a habeas petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief[.]" Rule 4 Governing Section 2254 Cases. As explained below, because Lawrence's claims are without merit and/or procedurally defaulted, the petition should be dismissed.

### i. Claim 1- Unlawful Use *Alford* Pleas

A petitioner may seek federal habeas relief from a state court conviction or sentence only if he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Matters relating solely to the interpretation and/or application of state law generally are not cognizable in federal habeas review. See e.g., *Lewis v. Jeffers*, 497 U.S. 764, 780 (199o)("federal habeas corpus relief does not lie for errors of state law"); *Hendricks v. Zenon*, 993 F. 2d 664, 674 (9th Cir. 1993) (as amended) (finding petitioner's claim was "exclusively concerned with state law and therefore not cognizable in a federal habeas); *Miller v. Vasquez*, 868 F. 2d 1116, 1118-19 (9th Cir. 1989) (holding the claim that an offense did not qualify as "serious felony" for

purposes of state sentencing enhancement was not cognizable on federal habeas review).

In his habeas petition to the Montana Supreme Court, Lawrence maintained that his *Alford* pleas were analogous to nolo contendere pleas and, therefore, entry of the *Alford* pleas was precluded by state statute, MCA § 46-12-204(4).[5] The Montana Supreme Court analyzed *North Carolina v. Alford*, the Montana legislative history interpreting the *Alford* decision, and the inclusion of *Alford* pleas into state law. *Lawrence v. Guyer, No. OP-18-0440, 2019 MT 74,* ¶¶ 6-9, 395 Mont. 222, 440 P. 3d 1. Ultimately, the Court concluded that "Lawrence's *Alford* pleas were guilty pleas, not nolo contendere pleas, and that § 46-12-204(4), MCA, did not prohibit the District Court from accepting the *Alford* pleas to the sexual offenses." *Id*. at ¶10. Thus, the Montana Supreme Court held, under state law, that *Alford* pleas are allowed in cases involving sexual offenses.

This decision regarding the acceptance of *Alford* pleas, pursuant to state statute, is exclusively within the state court's province. The Montana Supreme Court is the highest authority in the land – superior even to the United States Supreme Court – on the content and meaning of Montana law. See, e.g., *Estelle*, 502 U.S. at 67-68 (1991); *Wisconsin v. Mitchell*, 508 U.S. 476, 483 (1993) ("There

[5] This statue provides that a court may not accept a "plea of no lo contendre in a case involving a sexual offense."

is no doubt that we are bound by a state court's construction of a state statute."). This claim turns on state law, implicating no federal rights, and does not allege a basis upon which relief may be granted. Accordingly, the claim is not cognizable in federal habeas and should be denied.

**ii. Remaining Claims**

Before a state prisoner may present a claim to a federal court, he must first exhaust his available state remedies. 28 U.S.C. § 2254(b)(1)(A); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). To do so, the petitioner must invoke one complete round of the state's established appellate review process, fairly presenting all constitutional claims to the state courts so that they have a full and fair opportunity to correct alleged constitutional errors at each level of appellate review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). The exhaustion requirement prevents the federal court from "upset[ting] a state court conviction" without first allowing the state courts an "opportunity to…correct a constitutional violation." *Rose v. Lundy*, 455 U.S. 509, 518 (1982).

When a habeas petitioner has not fairly presented a constitutional claim to the highest state court, and it is clear that the state court would now refuse to consider it because of the state's procedural rules, the claim is said to be procedurally defaulted. *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996). But even if a petitioner's claim is procedurally defaulted, a federal district court may

still hear the merits of the claim if the petitioner meets one of two exceptions: (1) a showing of actual innocence, which means that a miscarriage of justice will occur if the constitutional claim is not heard in federal court, *Schlup v. Delo*, 513 U.S. 298, 329 (1995); or (2) a showing of adequate legal cause for the default and prejudice arising from the default, *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Lawrence does not argue he is actually innocent of the sexual offenses, rather he seems to believe he can establish both cause and prejudice to excuse the default. See, e.g., (Doc. 11 at 6.)

**a. Claims 2-13**

Although not presented in exactly the same manner, this set of claims, challenging the constitutionality and purported illegalities that occurred in his underlying state proceedings, is substantially the same as those he attempted to present to the Montana Supreme Court. Cf., Amd. Pet. (Doc. 7), with Lawrence's State habeas petition (Doc. 11-2 at 15-34.) Lawrence seems to assert that the default of these claims began when his appellate counsel on direct appeal from the 2014 conviction refused to raise certain claims.[6] Lawrence claims that he

[6] Apparently one of these claims Lawrence asked appellate counsel to raise, and that he attempts to raise before this Court (see claims 2, 7, 10, and 14) is that because he was not indicted by a grand jury, he should have been entitled to a preliminary hearing. See also, Resp. to Order to Show Cause (Doc. 11 at 9.) He believes the fact that the trial judge reviewed the affidavit in making a determination of probable cause, and, subsequently permitting the filing of an information, makes the court a party to the accusatory process and, therefore, biased. Lawrence maintains this procedure created a structural defect in his proceedings. See e.g., (Doc. 7-2 at 198-235.) But this Court has repeatedly held such claim is wholly lacking in merit. See e.g., *Ayers v.*

attempted to be diligent and preserve these arguments by filing a pro se habeas petition with the Montana Supreme Court. Lawrence's initial habeas petition was rejected because he was represented by counsel at that time and his direct appeal was pending. See e.g., (Doc. 11-2 at 2-4.) On direct appeal, in addition to the claim that his pleas were invalid due to the district court's failure to rule on the motion to sever, Lawrence argued that District Court Judge Haynes exhibited bias in comments he made during sentencing. The Montana Supreme Court never reached the bias issue, however, because the Court found the first issue to be meritorious, vacating Lawrence's pleas and remanding the matter. To the extent that Lawrence attempts to challenge what occurred in conjunction with the 2014 conviction and proceedings, including purported bias by Judge Haynes and ineffective assistance of trial counsel and/or appellate counsel,[7] that judgment was

---

*Kirkegard*, CV-14-110-BLG-DLC, 2015 WL 268870, at *2 (D. Mont. Jan. 21, 2015)(granting a motion to file an information "does not make a judge part of the accusatory process any more than issuing a search warrant makes a judge part of the investigative process"); *Smith v. Frink*, CV-14-83-M-DLC, Or. at 3 (D. Mont. May 19, 2014)(prosecution via information is entirely consistent with federal guarantees of due process); *Stewart v. Green*, CV-15-36-BU-DLC, Or. at 3 (D. Mont. Sept. 19, 2016) (pretrial procedure proper under Montana's Constitution and charging statutes; no violation of the Fifth Amendment); *Dunsmore v. State*, CV-15-95-M-DLC, Or. at 2-3 (D. Mont. Dec. 20, 2016)(claim of ineffective assistance of appellate counsel frivolous because charging cases in Montana by information rather than by grand jury has been found to be constitutional; claim that Fifth Amendment rights were violated because he was not indicted by a Grand Jury is frivolous because the Fifth Amendment has not been incorporated to the states).

[7] See, Lawrence's Resp. to Order to Show Cause (Doc. 11 at 6, 8-9)(bias exhibited by Judge Haynes); *id*. at 10 (purported ineffective assistance by trial counsel Piper, Sandefur, and Kaufman alleged to have occurred between 2012-2014); *id*. at 11 (ineffective assistance of appellate counsel alleged during appeal from 2014 judgment).

vacated. Thus, there is nothing for Lawrence to challenge before this Court in relation to his original state proceedings. Or, put another way, Lawrence cannot use those events to excuse the subsequent default of the claims that occurred following remand. This Court is only concerned with the June 28, 2017 Amended Judgment and Commitment,[8] because that is the state-court judgment under which Lawrence is currently in custody. See, Rule 1(a)(1) of the Rules Governing Section 2254 Cases.

A petitioner may overcome the prohibition on reviewing procedurally defaulted claims if he is able to show "cause" to excuse his failure to comply with the state procedural rule and "actual prejudice resulting from the alleged constitutional violation." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977). To establish cause for a default, a petitioner must show that some objective factor external to the defense impeded efforts to comply with the State's procedural rule. See, *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A factor is external to the petitioner if it "cannot fairly be attributed to him." *Coleman*, 501 U.S. at 753. To show "prejudice," a petitioner generally bears "the burden of showing not merely that the errors [in his proceeding] constituted a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with errors of

[8] See, (Doc. 9-1 at 3-16.)

constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

In his response to this Court's order, Lawrence essentially reasserts various constitutional infirmities that he believes occurred in his state court proceedings. For instance, he alleges Judge Langton "conceded" that Lawrence had been provided ineffective assistance of counsel by Ms. Kaufman and that he did not want the issue "coming right back." See, (Doc. 11 at 6.) But, Lawrence misrepresents what actually occurred. At the final pretrial conference, the parties were discussing a potential negotiated resolution. Mr. Fulbright, on behalf of the State, explained that as part of any agreement, it was non-negotiable that Lawrence waive his right to appeal any pretrial rulings. (Doc. 11-1 at 320). Lawrence's standby counsel, Mr. Schoenleben, explained that Lawrence was particularly concerned with his claim regarding the alleged ineffective assistance provided by previous trial counsel. *Id*. at 321:19-25. The State maintained that any negotiated resolution would also require waiver of IAC claims. *Id*. at 322:1-5. When Lawrence asked for clarification, the following exchange occurred:

> Judge Langton: I understand Mr. Fulbright to say that you would have to give up the right to challenge [ineffective assistance of counsel] as part of the deal.
>
> Fulbright: Correct.
>
> Judge Langton: In other words, we don't want to do this again. Two rounds is enough.

*Id*. at 322: 9-14. Nowhere is there any concession that Lawrence received

ineffective assistance, Judge Langton was simply relaying the State's position that any plea agreement would have to include an appeal waiver, in order to preclude future litigation in the matter.

Similarly, Lawrence claims Judge Langton was biased and advances conclusory and spurious allegations regarding his re-election campaign and other alleged wrongdoings by the court. (Doc. 11 at 9); see also (Doc. 9-1 at 31)(Lawrence indicates his belief that Judge Langton retired early in order to "avoid a federal indictment.) But Lawrence's own conclusions do not establish cause and find no support in the record before this Court.

What occurred in Lawrence's case is not a "chicken and egg daisy wheel routine." See, (Doc. 11 at 7.) To the contrary, the only reason Lawrence was prevented from presenting these claims for appeal is because he negotiated to waive his appellate claims in exchange for the certainty in the plea offer put forward by the State. Lawrence elected to not to go to trial and, instead, chose to negotiate for the dismissal of 243 counts of Sexual Abuse and accept an appropriate disposition resolution of 20 years with 10 of the years suspended, which was considerably less than the sentence he received in 2014. Had Lawrence wished to proceed to trial and preserve his ability to raise not only IAC claims, but also claims of judicial bias, he could have done so. In fact, the potential jurors were in the courthouse waiting for the trial to begin. But Lawrence elected not to

proceed.

Thus, Lawrence cannot show that it was some outside factor that prevented him from preserving and raising his claims on appeal, see e.g., *Murray*, 477 U.S. at 488, rather is was a factor directly attributed to Lawrence himself, see *Coleman*, 501 U.S. at 753. That is, it was his own decision to waive his appellate rights in exchange for the terms offered by the state in the negotiated resolution. Likewise, there is no apparent prejudice; Lawrence received the exact sentence for which he had bargained. See, *Frady*, 456 U.S. at 170. Thus, in relation to claims 2-13, Lawrence cannot demonstrate adequate cause and prejudice to set aside the procedural default. These claims should be dismissed.

**b. Claims 14-16**

The same general analysis pertains to claims 14-16. In this instance, however, Lawrence asserts that it would have been futile for him to attempt to present his claims to the Montana Supreme Court, given the Court's history of ruling against him. See, (Doc. 15 at 1.) Lawrence seems to believe that the Montana Supreme Court has essentially given free reign to the Montana Board of Pardons and Parole, thus the two entities have colluded to act in unison and "subvert the very laws by which both are supposedly premised to abide by and/or uphold." *Id*. at 2. Lawrence believes his filing history within the state court system demonstrates the purported collusion. *Id*. at 2-3.

In relation to Claim 14, regarding sex offender treatment, Lawrence cites to the *Imlay*[9] and *Antelope*[10] cases but does not explain why he failed to raise the claim at any point prior to the instant proceedings. *Id*. at 5-7. Likewise, he advances the perceived merits of his legal argument in relation to Claims 15 and 16, *id*. at 8-9, but does not address his own failure to present and/or exhaust these claims. Rather, Lawrence argue that there exists a "propensity pattern" between the Bureau of Pardons and Parole, the Twenty-First Judicial District, and the Montana Supreme Court to subvert state and federal law. *Id*. at 9. Accordingly, Lawrence claims he had no reasonable expectation of lawful rulings from any of these entities. *Id*.

Lawrence then goes on to argue a wide-ranging conspiracy between disparate actors such as former Montana DOC Director, Mike Batista; Chief Justice of the Montana Supreme Court Mike McGrath; former Federal Magistrate Judge Jeremiah Lynch; co-creator of current Montana state sex offender programming Mike Sullivan; Butte Pre-release Director Mike Thatcher; and retired district court judge and BOPP Board member Brad Newman. *Id*. Lawrence asserts these individuals constitute a "curious group" of legal and law enforcement "gangsters" who would likely collude and conspire to protect their own members

[9] See, *State v. Imlay*, 249 Mont. 82, 813 P. 2d 979 (1991).
[10] See, *United States v. Antelope*, 395 F. 3d 1128 (9th Cir. 2005).

rather than apparently follow and enforce lawful legal principles. *Id*. at 9-10. Lawrence then seems to argue that because he has no other avenue to correct his illegal and sentence and restrictions, this Court should do so by granting him federal habeas relief. *Id*. at 10.

It is apparent that Lawrence believes a great conspiracy exists against him. It is worth noting, however, that many of the individuals referenced, have nothing to do with Lawrence's past or present legal matters. But that fact is not pertinent to this Court's analysis. Lawrence has not shown that any of these individuals or entities impeded his efforts to comply with Montana procedural rules. See, *Murray*, 477 U.S. at 488. Again, it was Lawrence's own decision to enter into a plea agreement and accept the terms of the agreement, which thwarted his efforts at state collateral review. While Lawrence attempts to place blame everywhere else, it is his own decisions, and failure to follow standard state appellate procedure, that have created the default of these claims. This is a factor that is attributable, not to the cast of characters in the perceived conspiracy, but rather to Lawrence himself. See, *Coleman*, 501 U.S. at 753. Because Lawrence has not demonstrated cause to set aside the default, these claims should also be dismissed.

## III. Motion for Leave to File

Lawrence seeks leave of this Court to file three different documents which he asserts relate to his pending federal habeas petition. First, Lawrence seeks to

file a Petition for Writ of Mandamus and a Petition for Writ of Error regarding his Motion to Compel, which he asserts the Montana Supreme Court erroneously dismissed. (Doc. 16 at 1.) In relation to this state matter, Lawrence also advises that the United States Supreme Court denied his Petition for a Writ of Certiorari. *Id*.

Lawrence also seeks to file a Petition for Writ of Prohibition to the Twenty-First Judicial District Court of Montana regarding the sealed district court case of *Kelly Dean Worthan v. William Fulbright/Judge James Haynes*, which, according to Lawrence, involves fabrication of evidence, perjured testimony, and witness/victim intimidation. *Id*. at 2. Lawrence asserts that the similarity between the sealed *Worthan* case and his own are "frighteningly similar." *Id*. Lawrence seeks an order from this Court directing that the *Worthan* case be unsealed, as he believes the public has a right to know what is occurring in the Ravalli County District Court and that the claims made in *Worthan* speak directly to the denial of his own Motion to Compel. See, (Doc. 16-1 at 6-7.)

Federal district courts, as courts of original jurisdiction, do not serve as appellate tribunals to review errors allegedly committed by state courts. *MacKay v. Pfeil*, 827 F. 2d 540, 543 (9th Cir. 1987); *see also Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 296 (1970)("lower federal courts possess no power whatever to sit in direct review of state court decisions").

It would be entirely inappropriate for this Court to review the Montana Supreme Court's dismissal of Lawrence's Motion to Compel via a Petition for Writ of Mandamus or a Petition for Writ of Error as suggested by Lawrence. Further, as Lawrence acknowledges, he is not a party to the *Worthan* matter. See, (Doc. 16-1 at 7.) Thus, the Court can perceive of no basis by which it would be appropriate to intervene in an on-going state matter to which Lawrence has no direct involvement. To the extent that Lawrence seeks leave of the Court to file these motions, see generally, (Doc. 16), his request is denied. Additionally, Lawrence cannot use these proceedings, particularly at this procedural stage, as a vehicle to seek documents which he believes were wrongfully withheld in his state court proceedings.

**IV. Certificate of Appealability**

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Where a claim

is dismissed on procedural grounds, the court must also decide whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Gonzalez v. Thaler*, 656 U.S. 134, 140-41 (2012) (quoting *Slack*, 529 U.S. at 484).

Lawrence has not made a substantial showing that he was deprived of a constitutional right. His challenge to the purportedly unlawful use of an *Alford* plea is not cognizable in federal habeas. The remainder of his claims are procedurally defaulted and he has not demonstrated the requisite cause and prejudice to excuse the default. Reasonable jurists would find no basis to encourage further proceedings at this time. There are no close questions and there is no reason to encourage further proceedings in this Court. A certificate of appealability should be denied.

Based on the foregoing, the Court enters the following:

**ORDER**

To the extent that Lawrence seeks leave of the Court to file a Petition for Writ of Prohibition, a Petition for a Writ of Mandamus, and a Petition for a Writ of Error, see generally (Doc. 16), his request is denied.

**RECOMMENDATION**

1. The Petition (Doc. 1) should be DISMISSED with prejudice.
2. The Clerk of Court should be directed to enter by separate document a

judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability should be DENIED.

**NOTICE OF RIGHT TO OBJECT
TO FINDINGS & RECOMMENDATION
AND CONSEQUENCES OF FAILURE TO OBJECT**

Mr. Lawrence may object to this Findings and Recommendation within 14 days. 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

Mr. Lawrence must immediately notify the Court of any change in his mailing address. Failure to do so may result in dismissal of his case without notice to him.

DATED this 6th day of April, 2021.

*/s/ Kathleen L. DeSoto*
Kathleen L. DeSoto
United States Magistrate Judge